# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| BRANDON TODD, )<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>CHAD BLAKE )<br>    Defendant. )<br>)<br>)<br>CHAD BLAKE, )<br>    Counterclaimant, )<br>)<br>        v. )<br>)<br>BRANDON TODD, )<br>    Counterclaim Defendant. ) | Civil No. 3:17-cv-0012 |

**APPEARANCES:**

**LEE J. ROHN, ESQ.**
LEE J. ROHN & ASSOCIATES, LLC
ST. CROIX, VI
    *FOR THE PLAINTIFF AND THE COUNTERCLAIM DEFENDANT BRANDON TODD*,

**CHRISTOPHER ALLEN KROBLIN, ESQ.**
KELLERHALS FERGUSON KROBLIN, PLLC
ST. THOMAS, VI
    *FOR THE DEFENDANT AND COUNTERCLAIMANT CHAD BLAKE.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

    **BEFORE THE COURT** is Defendant/Counterclaimant Chad Blake's ("Blake") Motion for Summary Judgment. (ECF No. 205.) Also before the Court is Blake's motion to strike certain responses to Blake's statement of facts. (ECF No. 219.) For the reasons stated below, the Court will grant in part and deny in part the motion for summary judgment. The Court will further deny Blake's motion to strike.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, Brandon Todd ("Todd") and Chad Blake formed the limited liability company Virgin Diving, LLC ("Virgin Diving"), pursuant to an Operating Agreement executed on or about that time. (ECF No. 87-1 at 1, 6.) Virgin Diving was created to provide boat and scuba diving charters for hire. *Id.* at 1. Todd and Blake are the only members of Virgin Diving. *Id.*

Todd alleges Blake agreed to invest $50,000 into the venture and transfer ownership of a vessel, the M/V Alyeska ("Alyeska") to Virgin Diving. *See id.* at 1-3. Todd further alleges that Blake represented that the Alyeska needed "only minor repairs of around $25,000" to carry out the charters. *Id.* Todd avers that his own investments in Virgin Diving were: a line of credit up to $25,000, the vessel Paradisus, $75000 to be used for the down payment on the dive shop, and $25,000 to repair the Alyeska. *Id.* at 2.

Todd alleges that Blake misrepresented the condition of the Alyeska, and that Blake spent "far more" than the originally projected cost. *Id.* at 2. He further alleges that Blake initially transferred the title of the Alyeska to Virgin Diving, but subsequently retitled the vessel in his name without Todd's permission. *Id.* at 5. Todd asserts that Blake also knowingly misrepresented that he had negotiated an agreement to purchase the Patagon Dive Shop to conduct luxury charters, and the shop "could be partnered to do luxury charters and dives out of the Ritz Carlton[.]" *Id.* at 2. He further alleges that Blake misrepresented that Virgin Diving would be Blake's "full-time obligation," and that he had no other businesses in operation. *Id.* at 3.

Todd alleges that, throughout the venture, Blake misappropriated funds from Virgin Diving by withdrawing company funds for personal use, depositing charter proceeds into personal accounts, using company funds to pay for unnecessary repairs to the Alyeska, failing to account for profits made from unauthorized charters, and for paying himself for fees to which he was not entitled. *Id.* at 2-5.

In June 2016, Todd filed an action to arrest the Alyeska, alleging that Blake had failed to deposit the profits after using the vessel for charters. *See* ECF No. 1, *Virgin Diving et al. v. M/V Alyeska et al.*, Civ. No.: 3:16-cv-0052. Todd voluntarily dismissed the action without prejudice on December 20, 2016. *See* ECF Nos. 67, 68, Civ No.: 3:16-cv-0052. Todd alleges

that Blake falsely represented that if he ceased attempts to arrest the vessel, Blake would not sell the Alyeska. ECF No. 87-1 at 5. Todd alleges that Blake subsequently sold the vessel, and that, as a result, Todd "lost the vessel and the sums from the sale of the vessel." *Id.* at 5.

On February 9, 2017, Todd filed a four-count complaint against Blake in the Superior Court of the Virgin Islands, alleging: Breach of Fiduciary Duty ("Count One"); Breach of 13 V.I.C. § 1409 ("Count Two"); Conversion ("Count Three"); and an Action for an Accounting ("Count Five"). (ECF No. 1-3.) The action was removed to this Court on February 13, 2017. (ECF No. 1.) Blake filed an answer to Todd's complaint and counterclaims on February 24, 2017, alleging breach of contract; breach of fiduciary duty; defamation; and seeking judicial supervision in the dissolution of Virgin Diving. (ECF No. 3.) Todd subsequently amended the complaint include a fifth count of Fraud/Fraud in the Inducement ("Count Four"). (ECF No. 87-1.)

On April 1, 2021, Blake filed the instant Motion for Summary Judgment, seeking summary judgment on Counts Two through Five. (ECF No. 205.) Blake argues[1], that Count Five must be dismissed because an Accounting is a remedy, not a cause of action; that Count Four fails to allege fraud with sufficient particularity in accordance with V.I. R. Civ. P. 9(b) and is otherwise barred by the gist of the action doctrine; that Count Three is barred by Virgin Islands law and the gist of the action doctrine; and that there is no evidence that Blake breached the Duty of Loyalty or Duty of Care required to sustain Count Two. *Id.* at 2-15. Blake filed a Statement of Material Facts the same day. (ECF No. 206.) Todd filed his Opposition to Blake's Motion and Response to Blake's SOF on May 6, 2021. (ECF Nos. 211, 212.)

## II. LEGAL STANDARD

A party may move for summary judgment at any time until thirty days after the close of all discovery, and the Court "shall grant" the same "if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a–b). The moving party must bear "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[1] Blake argues for summary judgment on Counts Two through Five in reverse order. The Court will address them in the same manner.

if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted). In the alternative, the movant may discharge its initial burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see* Fed. R. Civ. P. 56(c)(1)(B) ("a party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing . . . that an adverse party cannot produce admissible evidence to support the fact.").

Once the movant has satisfied its initial obligation, the burden shifts to "the nonmovant to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Celotex*, 477 U.S. at 324) (emphasis added) (internal quotation marks omitted). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party" to demonstrate a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. Actual evidence is required, "[b]are assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (internal citations omitted).

Ultimately, once the moving party has satisfied its initial burden, the nonmovant must present evidence to establish a genuine dispute, rather than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party, but [c]onversely, where a non-moving party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Jutrowski*, 904 F.3d at 289 (internal citations and quotations omitted). In reviewing the evidence presented by both the moving and non-moving parties, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Daubert*, 861 F.3d at 388-89 (citing *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017). A grant of

summary judgment is inappropriate where "there is a disagreement over the inferences that can be reasonably drawn from the facts . ..." *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993).

## III. DISCUSSION

### A. Count Five - Action for an Accounting

During the telephonic status conference held on November 2, 2022, Todd conceded that the action for an accounting as alleged in Count Five was a remedy and agreed that the claim should be dismissed. Accordingly, the Court will dismiss Count Five of the First Amended Complaint.

### B. Count Four - Fraud/Fraud in the Inducement

i. *Whether Todd failed to allege fraud with particularity*

Blake argues that he is entitled to summary judgment on Count Four because Todd has failed to plead fraud with particularity.[2] (ECF No. 205 at 8.) For the reasons stated below, this argument fails.

All allegations of fraud must meet the heightened pleading standard of Rule 9(b). *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1418 (3d Cir. 1997). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Otherwise stated, plaintiffs must allege the "'who, what, when, where, and how' of the events at issue[.]" *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (quoting *in re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Nevertheless, the Third Circuit has cautioned against "focusing exclusively on the particularity requirement," as it is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."

---

[2] Blake applies VI. R. Civ. P. 9(b). However, the pleading requirement for fraud is a procedural issue, therefore the Federal Rules apply. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99 (3d Cir. 1983)) ("[T]he pleading requirements of Rule 9(b) 'appl[y] not only to fraud actions under federal statutes, but to fraud claims based on state law.'"); *Lutheran Home for the Aged v. Forest River, Inc.*, No. 1:20-cv-00035-SPB-RAL, 2020 U.S. Dist. LEXIS 78190, at *19 (W.D. Pa. May 1, 2020) ("[B]ecause the pleading standard of Rule 9(b) is procedural rather than substantive, federal law clearly controls.")

*Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

Todd has satisfied the pleading standards of Rule 9(b). The complaint alleges that Blake knowingly made several misrepresentations prior to establishing Virgin Diving in order to induce Todd into investing money into Virgin Diving: that vessel Alyeska needed only minor repairs; that Blake would transfer the title of the Alyeska to Virgin Diving; that Blake had negotiated agreement to purchase a dive shop, and that said dive shop was able to partner with the Ritz Carlton for luxury charters and dives; and that Blake had no other businesses in operation, with Virgin Diving being a "full-time obligation." *See* ECF No. 87-1 at 2-9. Todd alleges that, during the course of business, Blake misappropriated funds from Virgin Diving by withdrawing company funds for personal use, depositing charter proceeds into personal accounts, using company funds to pay for unnecessary repairs to the Alyeska, failing to account for profits made from unauthorized charters, and for paying himself for fees to which he was not entitled. *See id.* Todd finally alleges that Blake falsely represented that if he ceased attempts arrest the vessel, Blake would not sell the Alyeska. *See id.* at 5. Notwithstanding Todd's failure to specify where these acts took place, these allegations put Blake on notice as to the "who," "what," and "when" of the alleged fraud, at minimum. Considered in its totality, the First Amended Complaint adequately comports with the heightened pleading standard of Rule 9(b). Therefore, the Court will deny the Motion for Summary Judgment on these grounds.

    ii. *Whether the gist of the action doctrine bars Count Four.[3]*

---

[3] As an initial matter, the Court notes that Todd has not asserted a breach of contract claim. In *Pollara*, the Superior Court dismissed a plaintiffs' claims for negligent and fraudulent misrepresentation as barred under the gist of the action doctrine, observing that "Plaintiffs should have filed a breach of contract action rather than seeking damages based upon purported tort claims that actually only allege [the defendant's] failure to perform under the Contract." *Pollara*, 2016 V.I. LEXIS 49, at *28. Likewise, some courts within this district have applied the gist of the action doctrine in the absence of contract claims. *See e.g. Kelly v. Wells Fargo Bank, N.A.*, No. 1:13-CV-2298, 2014 WL 3394737, at *6 (M.D. Pa. July 10, 2014) ("[E]ven in the absence of an accompanying breach of-contract claim, the gist-of-the-action doctrine precludes a tort claim where the duties allegedly breached are intertwined with contractual obligations."); *Sarsfield v. Citimortgage, Inc.,* 707 F.Supp.2d 546, 552–555 (M.D.Pa.2010).  *See Pollara*, 2016 V.I. LEXIS 49 at *11 *.* This is consistent with doctrine's purpose, which is to maintain a "conceptual" divide between tort and contract claims, and determine which law governs available remedies. *See id.* at *22.

However, the Court was unable to identify any cases outside of *Pollara* which apply the gist action doctrine to tort claims unaccompanied by a contract claim. Furthermore, at least one other court within this district has

Blake argues, in the alternative, that the gist of the action doctrine bars Count Four. The Supreme Court of the Virgin Islands has not yet addressed the gist of the action doctrine and its application. However, the Superior Court has almost universally concluded that the doctrine represents the soundest rule for the Virgin Islands. *See e.g. Pollara v. Chateau St. Croix, LLC*, No. SX-06-CV-423, 2016 V.I. LEXIS 49, at *10-18 (Super. Ct. May 3, 2016); *Franken v. Sisneros*, Case No. ST-15-CV-88, 2016 V.I. LEXIS 248, at *9-12; *see also see also Joseph v. Divine Funeral Servs., LLC*, 71 V.I. 121, 129 (Super. Ct. 2019) (adopting the *Banks* analysis in *Pollara*, 2016 V.I. LEXIS 49, at *16);*Woodson v. Akal*, No. ST-16-CV-399, 2017 V.I. LEXIS 130, at *8 n.3 (Super. Ct. Aug. 17, 2017) (adopting the *Banks* analysis in *Pollara*). The Third Circuit has also concluded that doctrine is applicable in the Virgin Islands in light of the Superior Court's repeated acceptance thereof. *See Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013) (concluding that the gist of the action doctrine is applicable in the Virgin Islands in light of the Superior Court's repeated acceptance thereof). Accordingly, the Court will apply the gist of the action doctrine to the instant proceedings.

The gist of the action doctrine is a common law doctrine devised to "maintain the conceptual distinction between breach of contract claims and tort claims" *V.I. Port Auth. v. Callwood*, No. ST-11-CV-305, 2014 V.I. LEXIS 11, at *10 (Super. Ct. Feb. 28, 2014). The doctrine, which is widely applied by courts throughout the United States, bars claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract."

*Pollara,* 2016 V.I. LEXIS 49 at *11. The doctrine is "rooted in the basic notion that tort recovery should not be permitted for contractual breaches." *Id.* at *15. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only

---

observed that it "would be a strange result if [a] plaintiff was not able to bring a fraudulent inducement claim because of the 'Gist of the Action' doctrine when there is no breach of contract claim." *Binary Semantics Ltd. v. Minitab, Inc.*, No. CIV.A. 4:07-CV-1750, 2008 WL 763575, at *11 (M.D. Pa. Mar. 20, 2008). Nevertheless, the Court will consider the argument, keeping this tension in mind.

for breaches of duties imposed by mutual consensus agreements between particular individuals. *Id.* at *22-23

Although the gist of the action doctrine is not an absolute bar to tort actions related to contract claims, "tort suits for the mere breach of contractual duties [are precluded] unless the plaintiff can point to separate or independent events giving rise to the tort." *Id.* at *11. "If the harm incurred arose from the breach of a duty established within the four corners of a contract, then the aggrieved party's remedies are governed by contract law." *Id.* at *16. Conversely, "[i]f the harm is separate and distinct from the contract, creating a viable, stand-alone tort claim, then the gist of the action doctrine will not prevent the tort claim from being litigated." *Id.* Courts do not look to the precise language of the contract to determine whether the doctrine applies. Rather, if the "gravamen" or "essence" of the claims sounds in contract, the suit is barred. *See Pollara*, 2016 WL 2865874, at *5, 9; *Charleswell v. Chase Manhattan Bank, N.A.*, 45 V.I. 495, 519 (D.V.I. 2004) ("[I]f the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature[.]") (quoting *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.,* 123 F.Supp.2d 826, 833 (E.D.Pa.2000)); *Bealer v. Mut. Fire, Marine & Inland Ins. Co.*, 242 F. App'x 802, 804 (3d Cir. 2007) (non-precedential) (the gravamen of the claims was in contract; therefore the claim was barred) However, courts have cautioned against the "unbridled adoption of the gist of the action doctrine," as whether to apply the doctrine necessitates a fact-intensive inquiry. *Franken v. Sisneros*, No. ST-15-CV-88, 2016 V.I. LEXIS 248, at *11 (Super. Ct. Apr. 18, 2016); *see also Addie*, 737 F.3d at 868.

To survive a claim for fraudulent misrepresentation sounding in tort, plaintiff must demonstrate that:

> (1) [The defendant] misrepresented a material fact, opinion, intention, or law; (2) that it knew or had reason to believe was false; (3) and was made for the purpose of inducing [the plaintiff] to act or refrain from acting; (4) which [the plaintiff] justifiably relied on; and (5) which caused [the plaintiff] a pecuniary loss.

*Jahleejah Love Peace v. Banco Popular de Puerto Rico*, 75 V.I. 284, 291 (*reh'g denied sub nom. Love Peace v. Banco Popular De Puerto Rico*, No. SCTCIV20190057, 2022 WL 374274 (2022)).[4]

The Superior Court has found that "fraud to *induce* a person to enter into a contract is generally *collateral to (i.e., not 'interwoven' with)* terms of the contract itself." *V.I. Port Auth. v. Callwood*, No. ST-11-CV-305, 2014 V.I. LEXIS 11, at *13 (Super. Ct. Feb. 28, 2014)(emphasis in original). "Allowing a claim for fraudulent misrepresentation that induces one to enter into a contract . . . 'implicate[s] the larger social policies' of a tort action (e.g., society's desire to avoid fraudulent inducement[)]'". *Id.* However, "promises made to induce a party to enter into a contract that eventually become part of the contract itself cannot be the basis for a fraud-in-the-inducement claim under the gist of the action doctrine." *See Addie v. Kjaer*, No. 2004-135, 2009 U.S. Dist. LEXIS 15220, at *10 (quoting *Freedom Props., L.P. v. Lansdale Warehouse Co.*, Civ. No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *17 (E.D. Pa. Aug. 3, 2007))(collecting cases); *Pollara*, 2016 V.I. LEXIS 49, at *28 (claim of fraud based on failure to provide marketable title as agreed upon is barred by the gist of the action doctrine where the agreement was written into the contract). Therefore, to the extent that Todd asserts claims based on misrepresentations later incorporated into the Operating Agreement, such claims are barred by the gist of the action doctrine. Conversely, claims that stem from actions independent of the contract will survive.

Todd makes several allegations of fraudulent behavior. Namely, Todd alleges that Blake induced him to enter into the Operating Agreement by stating he would contribute the Alyeska to Virgin Diving but failing to do so, misrepresenting the condition of the vessel Alyeska and the projected costs to repair the vessel, misrepresenting Blake's ability to purchase a dive shop, and that misrepresenting Blake had no other obligations outside of

---

[4] The Supreme Court of the Virgin Islands the court distinguishes between misrepresentation sounding in contracts, in which the plaintiff seeks to rescind a contract, and misrepresentation sounding in torts, in which the plaintiff seeks damages. *See id.* at 288-89. The former is termed "fraud in the inducement"; the latter is "fraudulent misrepresentation." *Compare Love Peace*, 75 V.I. at 291 with *Wilkinson v. Wilkinson*, 709 V.I. 901, 914 (2019). The parties' briefs use the terms interchangeably. However, it is clear from the relief sought that Todd intended to bring a claim for fraudulent misrepresentation, not fraud in the inducement as it is understood under Virgin Islands law. Therefore, the Court apply the elements for fraudulent misrepresentation.

Virgin Diving.[5] *See* ECF No. 87-1 at 3-5. Todd further alleges that, during the course of business, Blake committed fraudulently misappropriated funds by withdrawing company funds for personal use, depositing charter proceeds into personal accounts, using company funds to pay for unnecessary repairs to the Alyeska, failing to account for profits made from unauthorized charters, and for paying himself for fees to which he was not entitled. Todd further alleges that Blake represented that he would not sell the vessel Alyeska if Todd ceased efforts to arrest the vessel, then sold the vessel regardless. *Id.* at 9.

Schedule B of the Operating Agreement lists Blake's "Member Contribution" as the vessel Alyeska, therefore failure to retitle the Alyeska in Virgin Diving's name was a violation of that portion of the agreement. *See* ECF No. 206-1 at 15. Todd's member contribution includes "$25,000 to fix the boat quickly." *See id.* Schedule B also lists three "[g]oals" for Virgin Diving, including "getting Alyeska shiny, purring and charter ready by hiring as much good help as possible Deviations from the projected costs and efforts to repair the vessel

---

[5] Todd also raises several precontractual misrepresentations not stated or even alluded to in the First Amended Complaint. Todd asserts that Blake falsely stated that he would hire employees for Virgin Diving, misrepresented his business experience, "violated internal revenue laws," concealed that he had personal loans on the vessel Alyeska, and "performed fraudulent hiring and vessel registration." *See* ECF No. 211 at 8-11.

A plaintiff may introduce certain new facts into the record at the summary judgment stage. *See Bell Atl. v. Twombly*, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). However, a plaintiff may not introduce new legal theories or claims through an opposition to a motion for summary judgment. *Duardo v. City of Hackensack*, No. 2:17-CV-2308-WJM-ESK, 2022 U.S. Dist. LEXIS 190393, at *42-43 (D.N.J. Oct. 18, 2022) (citing *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008); *see also Phillips v. SEPTA*, No. CV 16-0986, 2018 U.S. Dist. LEXIS 22337 at *4 (E.D. Pa. Feb. 12, 2018) (citing *myService Force, Inc. v. Am. Home Shield*, No. 10-6793, 2013 U.S. Dist. LEXIS 7027 at *12 (E.D. Pa. Jan. 17, 2013) ("Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage'") (internal citation omitted).

Courts in this circuit have regularly declined to consider novel theories of liability asserting in motions for summary judgment, particularly when those allegations would have been otherwise subject to the heightened pleading standards of Rule 9(b), as here. *See e.g. Conseco Life Ins. Co. v. Heady*, Civil Action No. 2:11-cv-3716 (SDW) (MCA), 2013 U.S. Dist. LEXIS 89431 (D.N.J. June 26, 2013) (striking three new theories of equitable fraud asserted in a summary judgment brief); *CSB-System Int'l, Inc. v. SAP Am., Inc.*, No. 10-2156, 2012 U.S. Dist. LEXIS 65910, at *22 (E.D. Pa. May 9, 2012) (finding that new inequitable conduct theory asserted in summary judgment motion failed to satisfy the pleading standards of Rule 9(b)); *Williams v. City of Lancaster*, No. 18-2773, 2020 U.S. Dist. LEXIS 7734, at *27 (E.D. Pa. Jan. 10, 2020) (holding that the plaintiff could not assert a new claim in his summary judgment brief).

In his Opposition, Todd argues that Blake "has not addressed" the aforementioned misrepresentations in his motion. (ECF No. 211 at 11.) However, as noted by Blake, it is not possible for a party to address allegations not previously alleged. The Court simply cannot entertain these novel, threadbare theories of fraud without significant prejudice to Blake. Consequently, the Court will not consider allegations of fraud not previously asserted in Todd's First Amended Complaint.

flow directly from those contractual statements. Furthermore, Article V of the Operating Agreement, titled "Management", states that "[n]o Member will take part in or interfere in any manner with the conduct or control of the business of the Company . . . ." *Id.* at 5. If Blake partook in other businesses that interfered with Virgin Diving's business, this would represent a breach of this requirement of the Operating Agreement.

Allegations regarding the failure to perform duties arising out of precontractual statements later outlined in the contract are barred under the gist of the action doctrine. The precontractual promises outlined here were later written into the Operating Agreement, and therefore became a contractual duty. Failure to perform these duties represents a breach of the Operating Agreement. The duties would not exist, but for their integration into the contract, thus liability stems from the contract. The gravamen of this claim lies in contract. Therefore, the claim as to the allegedly fraudulent precontractual promises is barred by the gist of the action doctrine, and Todd "should have filed a breach of contract action rather than seeking damages based upon purported tort claims that actually only allege [Blake's] failure to perform under the Contract." *Pollara*, 2016 V.I. LEXIS 49, at *28.

Conversely, Todd's allegations that Blake fraudulently misappropriated Virgin Diving's funds and property for personal use are not barred by the gist of the action doctrine. Blake does not specify which section of the Operating Agreement would pertain to alleged fraudulent use of company funds. Read liberally, Article VII of the Operating Agreement, which governs cash distributions, may address these portions of the fraud claim. However, "even if a contract discusses duties between two parties, if societal norms also impose such duties, the action is not barred by the gist of the action doctrine. *Batoff v. Charbonneau*, No. 12-cv-05397, 2013 U.S. Dist. LEXIS 37497, at *20 (E.D. Pa. Mar. 19, 2013) (citing *Brown & Brown Inc. v. Cola,* 745 F. Supp. 2d. 588, 623 (E.D. Pa. 2010). While Blake may have had a contractual duty to distribute profits in accordance with the Operating Agreement, he also has a broader societal duty to refrain from taking a business' funds for personal use. That societal duty creates a tort that is separate and distinct from the contract. Accordingly, those allegations are not barred by the gist of the action doctrine.

The Court also finds that Todd's allegation that Blake represented that he would not sell the vessel Alyeska if he ceased effort to arrest the vessel, is not barred by the gist of the

action doctrine. This agreement, which was made after the Operating Agreement was in place, is a separate and independent event unrelated to the contract. While the Operating Agreement created a duty to not sell the Alyeska absent the "consent of two-thirds interest of the Members,"[6] the alleged agreement to not sell the Alyeska in exchange for the cessation of legal action spawned a duty that is separate and distinct from the contract. Therefore, this allegation of fraud is not barred by the gist of the action doctrine.

> *iii. Whether there is a genuine dispute of material fact as to Count Four*

Blake further argues that, to the extent that a claim for fraud exists, there is no evidence to support such a claim.

There are several genuine issues of material fact in dispute in this case as to the claims for fraudulent misrepresentation. For example, with regard to Todd's allegation that Blake "falsely represented if Todd and Virgin Diving ceased efforts to arrest the vessel that Blake would not exercise control or sell the vessel Alyeska," Blake asserts that there is no evidence to support "when the representation was made, that any such representation was false, that Blake intended Todd to rely on the representation, or that Todd justifiably relied on the representation."  (ECF No. 205 at 9.) Todd disputes this assertion by offering the transcript of the December 7, 2020 deposition of Blake. ECF No. 212-2, Transcript of Blake Dep. In the deposition, Blake is asked if he "ever authorize[d] his attorney to represent to the court that if the vessel wasn't arrested you would not sell it" to which Blake responds: "As of today, I don't remember." Transcript of Blake Dep. 95:17-20. Thus, a genuine dispute exists as to four elements of fraudulent misrepresentation: whether Blake misrepresented a material fact, opinion, intention, or law; that he knew or had reason to believe was false; and was made for the purpose of inducing Todd to act or refrain from acting; which Todd justifiably relied on.

Because the Court finds that Blake has failed to meet its burden of demonstrating the absence of any genuine issue of material fact, the Court will deny the motion for summary judgment as to this claim for fraudulent misrepresentation as to the remaining fraud allegations.

> ### C. Count Three - Conversion
>> *i. Whether the gist of the action doctrine bars Count Three*

---

[6] (ECF No. 206-1 at 6.)

Blake argues that any claim that Todd has "somehow been damaged by any action Blake allegedly took with respect to the Alyeska or Company funds is a claim for breach of the Operating Agreement, not a separate, independent tort claim." (ECF No. 205 at 10.) Therefore, Blake argues, it is barred by the gist of the action doctrine.

Claims of conversion of property related to a contract are not inherently barred by the gist of the action doctrine. *Integrated Waste Sols., Inc. v. Goverdhanam*, No. 10-2155, 2010 U.S. Dist. LEXIS 127192, at *42 (E.D. Pa. Nov. 30, 2010)( "When a plaintiff has a property interest in the thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar recovery under a conversion theory even though the property may also be the subject of a contract.") The sale of the vessel certainly may have violated the Operating Agreement—specifically the provision that prohibits members from taking any action "which makes it impossible to carry on the ordinary business of the company." (ECF No. 205-1 at 6.) However, the allegations that Blake sold personal property to which he was not entitled and pocketed the proceeds do not rely upon the contract. As previously discussed, the alleged agreement to not sell the vessel if Todd ceased legal action to arrest the Alyeska created duties independent of the Operating Agreement. The sale purportedly occurred after these alleged duties were established. Therefore, conversion claims related to the sale are not inextricably intertwined with the Operating Agreement. Therefore, the gist of the action doctrine does not bar Count Three.

> *ii. Whether there is a genuine dispute of the material fact as to Count Three*

Under Virgin Islands law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Ross v. Hodge*, 58 V.I. 292, 308 (2013) (quoting Restatement (Second) of Torts § 222A(1) (1965)). Furthermore, "[c]onversion may be committed by intentionally engaging in several types of acts, one of which is obtaining possession of a chattel from another by fraud." *Ross*, 58 V.I. at 308 (citing Restatement (Second) of Torts §§ 221(b), 223).

Blake argues that summary judgment is warranted as to the claim for conversion because all actions were taken pursuant to his authority under the Operating Agreement. *See* ECF No. 205 at 13. However, Todd asserts that he, as a member of Virgin Diving, had an

"immediate property right" to the Alyeska at the time of the sale, therefore the sale was unlawful. (ECF No. 211 at 16.) Todd cites to Blake's deposition, in which he states that he "did not have [Todd's] consent to sell the boat." *See id.* at 17. This raises a genuine dispute of material fact regarding at least one of the elements of conversion, thus summary judgment as to the claim for conversion is denied.

### D. Count Two - Breach of 13 V.I.C. § 1409

Count Two alleges a violation of 13 V.I.C. § 1409, which states that members owe the fiduciary duties of loyalty and care to member managed company. Under Section 1409, a member must "account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity." *Id.*

Blake asserts that "Todd has testified only that he heard a 'rumor' and that an unidentified person 'at a bar once told [Todd] things were happening'" but failed to provide specific details regarding who made these allegations or what "things" were happening. (ECF No. 206 at ¶¶ 24-26.) However, in his response, Todd denied these assertions, stating that he "suspected that Mr. Blake was running charters on the Alyeska for his own benefit and not reporting it…" among other specific concerns. (ECF No. 212 at 30.) In support, Todd cites his deposition, taken under oath on March 3, 2021, which confirms this discrepancy of facts. (ECF No. 212-1 at 74-75.)

Blake has failed to prove that there is no genuine issue of material fact. Therefore summary judgment is denied as to Count Two.

### E. Blake's Motion to Strike

On April 21, 2021, Blake filed a Statement of Material Facts ("SOF") in support of his motion for summary judgment. (ECF No. 206.) Todd filed his Opposition to Blake's Motion and Response to Blake's SOF on May 6, 2021. (ECF Nos. 211, 212.) On May 20, 2021, Blake moved to strike Todd's responses to paragraphs 3, 4, 8, 18, and 25 of his SOF. (ECF No. 219.) Blake argues that the responses "fail to comply" with LRCi 56.1(b), which governs responses to statements of material facts, as they were non-responsive and argumentative. *Id.* at 1-6.

In so doing, Blake is effectively requesting that the Court deem those facts undisputed for the purposes of summary judgment.

> Rule 56.1 provides:
>
> Any party adverse to a motion filed under this rule may file. . . a response to the movant's statement of material facts about which the movant contends there is no genuine issue. The respondent must address the facts upon which the movant has relied pursuant to subsection (a), using the corresponding serial numbering and either: (i) agree that the fact is undisputed; (ii) agree that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) state that the fact is disputed. In addition, the respondent may file a concise statement of any additional facts, serially numbered, that the respondent contends are material to the motion for summary judgment and as to which the respondent contends there exists a genuine issue to be tried.
> . . .
> Failure to respond to a movant's statement of material facts, or a respondent's statement of additional facts, as provided by these Rules may result in a finding that the asserted facts are not disputed for the purposes of summary judgment.

LRCi 56.1(b)

District courts enjoy broad discretion when interpreting their local rules. *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018). Furthermore, courts may "depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000).

Several of Todd's responses to Blake's SOF fail to directly address the facts asserted, assert facts of his own, and/or lack specific citations in support thereof. *See* ECF No. 212. Two of Todd's responses span four and eleven pages, respectively, and inject commentary far beyond the requirements of Rule 56.1(b). *See id.* Much of the language in Todd's response would have been appropriately asserted in his own concise statement of facts. However, striking Todd's responses would require the Court to consider the corresponding paragraphs in Blake's SOF as undisputed. This would severely prejudice Todd, as those paragraphs address the bulk of the allegations in the First Amended Complaint.

Furthermore, Blake has not asserted that he is prejudiced by the responses, and the Court does not believe that he would be. Therefore, based on this balance of prejudices, the Court will deny Todd's Motion to Strike.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Blake's motion for summary judgment with respect to counts Two and Three and will grant summary judgment as to Count Four. The Court will grant, in part, and deny, in part, Blake's motion for summary judgment on Count Four. The Court will also deny Blake's motion to strike certain responses to Todd's Statement of Facts.

An appropriate order follows.

**Dated:** March 28, 2023               */s/ Robert A. Molloy*
                                        **ROBERT A. MOLLOY**
                                        **Chief Judge**